**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff,*
JOSHUA TRENT

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA TRENT,<br><br>                        Plaintiff,<br><br>         vs.<br><br>DEBT ASSISTANCE NETWORK, LLC; AND LEE SANDS,<br><br>                        Defendants. | Case No.: **'21 CV 574  LAB MDD**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>    **I. THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C.  §§ 1679, ET SEQ.;**<br>   **II. CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUSINESS & PROFESSIONS CODE §§ 17200, ET SEQ.**<br>**III. BREACH OF CONTRACT**<br>**IV. NEGLIGENCE**<br>  **V. INTENTIONAL MISREPRESENTATION**<br>**VI. NEGLIGENT MISREPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Plaintiff Joshua Trent ("Plaintiff"), a consumer who purchased credit repair services from Defendants DEBT ASSISTANCE NETWORK, LLC ("DAN") and its owner LEE SANDS ("Sands") (collectively "Defendants"), by and through Plaintiff's attorneys, bring this action to challenge Defendants' unlawful conduct and unfair business practices as a credit repair organization offering credit repair services, which conduct caused Plaintiff damages.

2. Defendants charge consumers fees and represents that it provides debt relief, debt negotiation, and debt management services to Plaintiff and similar consumers to eliminate or reduce their debts and, either expressly or impliedly, ultimately improve their credit scores, credit reports, or credit worthiness. Defendants prey on consumers like Plaintiff who find themselves deeply in debt or with poor credit, and are therefore especially susceptible to Defendants' illegal and deceptive practices.

3. In enacting the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.* ("CROA"), Congress declared that "[c]ertain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters." 15 U.S.C. § 1679(a)(2).

4. The purposes of the CROA are (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b)(1); 15 U.S.C. § 1679(b)(2).

5. CROA prohibits a variety of false and misleading statements, and fraud, by credit repair organizations ("CROs"). CROs may not receive payment before any promised service is "fully performed." Services must be under written contract,

KAZEROUNI
LAW GROUP, APC

which must include detailed descriptions of services and contract performance time. CROs must provide consumers with separate written disclosure statements describing the consumer's rights before entering into the contract. Consumers can sue to recover the greater of the amount paid or actual damages, punitive damages, costs, and attorney's fees for violations.

6. Plaintiff alleges that Defendants operate an elaborate scheme to defraud debtors and preys on consumers who are drowning in credit card and unsecured debt. Defendants target consumers like Plaintiff, specifically those with larger debts, who are unable to make minimum payments or who will soon be unable to make such payments or who have a less than ideal credit history and/or score.

7. Defendants fraudulently disclaim that they offer debt settlement and credit repair services in an attempt to avoid strict consumer protection regulations enacted to protect vulnerable and unknowing consumer debtors.

8. Plaintiff alleges that Defendants violated: (i) the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.* ("CROA"); (ii) California Bus. & Prof. Code §§ 17200, *et seq.*; (v) breach of contract; (vi) negligence; (vii) intentional misrepresentation; and (viii) negligent misrepresentation.

9. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

10. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

11. Unless otherwise indicated, the use of a defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named defendant.

**JURISDICTION AND VENUE**

12. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1679, *et seq.* as this action arises from violations of federal law; and this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's California state law and common law claims.

13. Because Defendants conducts business within the State of California, personal jurisdiction is established.

14. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) at all times relevant, Plaintiff resided in the County of San Diego, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; (iii) the agreement entered into between Plaintiff and Defendants was executed in this county; and (iv) Defendants conducts business within this judicial district.

15. In a similar case filed in this District previously against Defendant Debt Assistance Network, LLC, the Honorable Michael M. Anello held that an arbitration clause does not govern the parties dispute and there is no valid arbitration agreement between the parties. *See Fernandez v. Debt Assistance Network, LLC*, No. 19-cv-1442-MMA-JLB, 2020 U.S. Dist. LEXIS 20458 (S.D. Cal. February 5, 2020).

**PARTIES**

16. Plaintiff is a natural person who at all times relevant resided in the County of San Diego, State of California, and entered into a contract with Defendants based on Defendants' representation that it would sell, provide, or perform a service for the purpose of advising or assisting Plaintiff with their debt and to improve Plaintiff's consumer credit record, history, or rating.

17. Defendant Debt Assistance Network is a "credit repair organization" as defined by 15 U.S.C. § 1679a(3)(A) providing "credit repair services" as defined by 15 U.S.C. § 1679b.

18. Defendant Debt Assistance Network, LLC is a Nevada limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada.

19. Defendant Lee Sands was at all times relevant an equitable owner and/or manager of Debt Assistance Network, LLC and specifically authorized, directed or participated in the illegal conduct described here and specifically knew or reasonably should have known that the conduct described herein could injure plaintiff, and Defendants failed to take or order appropriate action to avoid that harm. As a result, Defendant Lee Sands is personally liable for damages caused by the described fraud and deceit described herein.

20. Under California's altar ego doctrine, Defendant Lee Sands is personally liable for any damages herein as there is a unity of interest between Defendant Debt Assistance Network, LLC and its equitable owners that the separate personalities of the corporation, and the shareholders do not in reality exist. Further, there would be an inequitable result if the acts in question were to be treated as those of the corporation alone as Debt Assistance Network, LLC is used by Defendant Lee Sands, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose

### FACTUAL ALLEGATIONS

21. Sometime prior to March 2017, Plaintiff incurred certain financial obligations to several original creditors that were money, property, or their equivalent, which are due or owing, or alleged to be due or owing, from a natural person to another person and were therefore debts.

22. Plaintiff learned of Debt Assistance Network ("DAN") through an affiliate of Defendant, who on behalf of DAN and for DAN's benefit was authorized by DAN to promote its services, and advertise and offer debt consolidation, debt settlement, debt relief, and improved credit through the DAN Program.

23. On or about March 3, 2017, Plaintiff entered into a contract with Defendants which was titled as a "Consumer Tender Of Offer and Debt Assumption Agreement" to receive Defendants' assistance with paying debts, debt settlement, and to improve Plaintiff's credit record, history, or rating with credit reporting agencies.

24. Defendants advertise and hold themselves out as being in the business of providing debt settlement, debt relief, debt resolution, credit repair, and credit restoration services to consumers.

25. Specifically, the first page of DAN's contract with Plaintiff states:

> "In searching for a solution to my debt problems, I am seeking the assistance of DAN in minimizing the damage that might have or will result from my present situation.
>
> The purpose of this agreement is to employ the use of DAN's expertise in assisting me to accomplish the following consumer benefits:
> **My open accounts with original creditors:**
> To convince my creditors to agree to amend my existing agreements with new terms and conditions, e.g. 0% interest, no late fees, no over limit charges or reporting adverse account information to credit reporting agencies, and other more favorable terms."

26. Under the "Services provided to [Plaintiff] by DAN," Defendants contractually agreed to make payments on the accounts enrolled with DAN.

27. In addition, under the "Services provided to [Plaintiff] by DAN," Defendants contractually agreed to provide the client with a local attorney for representation and defense if a client was sued regarding an alleged debt.

28. Pursuant to Defendants' contract, and to facilitate Defendants' services to Plaintiff, Plaintiff provided Defendants with a list of debts and account information for several accounts which Plaintiff had balances on. Plaintiff had been making payments on prior to the agreement with Defendants and Plaintiff's accounts had not been charged off by Plaintiff's creditors

29. At the time Plaintiff entered into the contract with Defendants, Plaintiff had a total alleged debt of $65,062.90 related to eleven (11) accounts enrolled with Defendants in the DAN program.

30.   Defendants required Plaintiff to pay an initial deposit of $3,000 on March 5, 2017 and $737.08 per month for 36 months beginning April 4, 2017. Defendants' explanation of this amount is a "debt assumption fee" of $26,025.20 plus an initial account setup fee of $250 plus $100 per account enrolled, plus an account maintenance fee of $59.95 per month for DAN's service.

31.   As part of Defendants' contract, Plaintiff was required to provide Defendants with limited Power of Attorney to provide its services with regard to Plaintiff's accounts. Defendants further required Plaintiff to forward mail all further statements and communications from creditors regarding enrolled accounts to Defendants' address, "including collection letters, attorney letters, summons etc." and asked that Plaintiff not discuss their financial situation or resolution of the accounts with creditors or collectors "in order not to confuse or interfere with the process of communications via mail being used by DAN." The contract also required that Plaintiff agree not to close any of the credit accounts listed on the List of Debts or in the resolution process with Defendants.

32.   Once Plaintiff entered into the contract with Defendants, Plaintiff did not receive any further communication from its creditors as Defendants had diverted all communications from Plaintiff's creditors and directed Plaintiff not to discuss their accounts with creditors or collectors, allowing Defendants to control any and all information Plaintiff received from thereon from Plaintiff's creditors regarding the accounts enrolled in Defendants' DAN program.

33.   Defendants' contract provides a "100% Guarantee Policy" which ensured that Plaintiff would be provided a 100% refund for an account "in the very unlikely event a new agreement is not accepted by a qualified original creditor within 90 days of enrollment."

34.   Defendants created and maintained an online portal through which Plaintiff could access information regarding the status of each of its accounts placed with Defendants in the DAN program.

35.  Based on Defendants' representations to Plaintiff and relying on the contract and no conflicting notices or information from Defendants, Plaintiff made the monthly payments as agreed to Defendants. Based on the representations made by Defendants, Plaintiff believed that the money paid to Defendants was subsequently being paid to Plaintiff's creditors and relied on Defendants to make the monthly payments to Plaintiff's creditors pursuant to the "new terms" which were purportedly accepted by the creditors.

36.  Defendants' representation to Plaintiff that "new terms had been accepted" by Plaintiff's creditors was false and intentionally made to conceal the true facts as known by Defendants, misleading Plaintiff to believe that Plaintiff's creditors had accepted "new terms" and Defendants were performing services as promised when in fact Defendants did not. Defendants knowingly made these false representations that were reasonably calculated to deceive Plaintiff for the purpose of continuing to collect money from Plaintiff for Defendants' purported "services."

37.  These representations by Defendants did in fact deceive Plaintiff, as Plaintiff had relied on Defendants' representations that "new terms have been accepted" by Plaintiff's creditors and Plaintiff continued making the scheduled payments to Defendants for their "services," believing that Defendant was in communication with Plaintiff's creditors and Defendants were making the required payments to Plaintiff's creditors as Defendants had promised and contractually agreed to do.

38.  Defendants' false and misleading representations deceived Plaintiff into believing there was no reason to be concerned about taking any independent action with respect to their creditors, as Plaintiff relied on the "services" promised and agreed to in Defendants' contract. As a result of Defendants' control and diversion of communications from Plaintiff's creditors, and Defendants' continued false and misleading representations regarding Plaintiff's accounts and Defendants' "services," Plaintiff was misled and deceived by

Defendants and had no way to know they were in default on any accounts enrolled with Defendants until Plaintiff began receiving communications from debt collectors and collections attorneys and was ultimately sued by his creditors related to the accounts entrusted with Defendants.

39. After some time, Plaintiff realized that his credit history and credit score were declining, which caused Plaintiff damages. Plaintiff contacted Defendants on several occasions, and Defendant Lee Sands personally responded to Plaintiff's inquiries assuring Plaintiff that his accounts were moving through Defendants' procedures with the creditors as expected.

40. Despite Plaintiff's payments to Defendants according to the contract and Defendants' reassurance that nothing was amiss and Plaintiff's accounts were moving through Defendants' procedures with creditors as expected, Plaintiff began receiving debt collection communications from his creditors. Plaintiff notified Defendants and forwarded copies of such collection communications to Defendants and, in reliance on the parties' contract, Plaintiff believed that Defendants would handle any necessary response and any further communications required regarding the accounts enrolled with Defendants.

41. As a result of Defendants' conduct, misrepresentations, and failure to make necessary payments on the accounts enrolled with Defendants in the DAN program, Plaintiff's accounts went unpaid, causing Plaintiff's accounts to go into default, and causing debt collection lawsuits to ultimately be filed against Plaintiff by some of his creditors.

42. Specifically, on or about January 16, 2018, Bank of America, N.A. filed a collection lawsuit against Plaintiff in state court under the case number 37-2018-00002389-CL-CL-NC, related to an account enrolled with Defendants DAN program.

43. Also, on or about November 26, 2018, Discover Bank filed a collection lawsuit against Plaintiff in state court under the case number 37-2018-00060016-CL-CL-

NC, related to an account enrolled with Defendants' DAN program.

44. Pursuant to Defendants' instructions, and the contract, Plaintiff notified Defendants of these collection lawsuits filed against him and forwarded the documents to Defendants. Based on Defendants' representations in the contract, Plaintiff was relied on Defendants to provide legal representation to defend Plaintiffs in the collection lawsuit and believed that Defendants had provided or would provide with legal representation pursuant to the guarantee in the contract between Defendants and Plaintiff.

45. Despite Defendants' representations and contractual duties owed to Plaintiff, Defendants failed to provide Plaintiff with legal representation and Defendants failed to file, or cause to be filed, a responsive pleading on Plaintiff's behalf in the Bank of America collection action.

46. Ultimately, on or about May 30, 2018, as a direct and proximate result of Defendants' failure to provide Plaintiff with legal representation in the lawsuit, Bank of America entered default and obtained default judgment against Plaintiff in the amount of $9,484.58 after no response had been filed on Plaintiff's behalf.

47. Defendants breached the contract with Plaintiff by failing to provide Plaintiff with legal representation in the Bank of America collection lawsuit. As a direct and proximate result of Defendants failure to perform the terms of the agreement and negligence, Plaintiff suffered actual damages and was caused to incur additional debt as a result of the default judgment being entered against him.

48. Plaintiff is informed and believe that Defendants breached the contract by failing to make payments as promised by Defendants pursuant to the parties' agreement on the accounts Plaintiff had enrolled with Defendants.

49. Plaintiff is informed an believe that Defendants breached the contract by failing to reach new agreements with new terms with Plaintiff's creditors, despite Defendants' express representation that "new terms [had] been accepted" by Plaintiff's creditors.

50. Plaintiff relied upon Defendants' representation that "new terms" were accepted by each of Plaintiff's creditors for the accounts enrolled with DAN; and was misled by Defendants' fraudulent representation that Defendants had entered into new contracts with Plaintiff's creditors.

51. Plaintiff often reached out to Defendants for an explanation why his credit was declining even after two years of making consistent payments to Defendants, but often received no response from Defendants.

52. Ultimately, after Defendants' failures to perform as promised, Plaintiff ceased making further payments to Defendants on November 20, 2019. Over the period of time that Plaintiff made payments to Defendants, between March 3, 2017 ad November 20, 2019, Plaintiff paid Defendants $29,543.88 for Defendants' promised debt consolidation, debt resolution, and credit repair services.

53. In addition to the above breaches of the contract, Defendants breached the contract with Plaintiff by failing to refund payments Plaintiff provided to Defendants when Defendants knew or should have known that no new terms had been accepted by Plaintiff's creditors and/or no new contracts had been entered into with the creditors of Plaintiff' accounts enrolled with Defendants.

54. Through this conduct Defendants have caused Plaintiff damages including but not limited to, loss of money, increased debt, damage to Plaintiff's credit scores, credit reports, credit worthiness, credit history and reputation.

55. As a result of the damage to Plaintiff' credit caused by Defendants, Plaintiff was denied several applications for credit due to the derogatory credit history, delinquent trade lines, and presence of collections accounts on Plaintiff's credit reports, which was all caused by Defendants' conduct, unlawful and unfair business practices, and Defendants' breaches of their own contract.

56. Defendants engaged in fraudulent practices and made material misrepresentations to Plaintiff through misleading or untrue claims about what services Defendants could or would actually accomplish for Plaintiff.

57. Defendants' contract unfairly and unlawfully attempts to evade anticipated and inevitable liability for its conduct and misrepresentations by including language to trick or force Plaintiff to waive his legal rights, thereby making Defendants' "Consumer Tender Of Offer and Debt Assumption Agreement" void and unenforceable against Plaintiff.

58. Through this conduct, Defendants violated 15 U.S.C. § 1679b(a)(3) by making an untrue or misleading representation regarding its credit repair and debt settlement services.

59. Through this conduct, Defendants violated 15 U.S.C. § 1679b(a)(4) by engaging directly or indirectly in any act, practice, or course of business that constitutes or results in the commission or attempt to commit a fraud or deception on a person in connection with the sale of Defendants' credit repair and debt settlement services.

60. Through this conduct, Defendants violated 15 U.S.C. § 1679b(b) by charging or receiving payment in advance for the performance of services the Defendants had agreed to perform for Plaintiff before the service was fully performed.

61. Through this conduct, Defendants violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* by engaging in unlawful business practices in violation of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.* ("CROA") as described above.

62. As a result of its unfair business practices, Defendants gained and continue to gain a competitive advantage over competitors who comply with the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.* ("CROA") and Bus. & Prof. Code §§ 17200, thereby receiving more money from, and causing injury to, unsuspecting consumers and the general public.

63. Alternatively, Defendants engaged in a pattern of "unfair" business practices that violate the wording and intent of the abovementioned statute/s by engaging in practices that are immoral, unethical, oppressive or unscrupulous, and against public policy, the utility of such conduct, if any, being far outweighed by the

harm done to consumers.

64. Through this conduct, Defendants violated California Business and Professions Code §§ 17200, *et seq.* and engaged in business practices that are deceptive because Defendants misrepresented its services and the work done by Defendants on the accounts Plaintiff enrolled with Defendants.

65. Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendants engaged in acts of unfair competition, including those described above and herein, prohibited and in violation of Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in a pattern of "fraudulent" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*

66. Defendants' conduct is likely to deceive the public who are likely to believe that Defendants may contractually charge a retainer fee, service fee, or pressure consumers to pay Defendants a monthly fee for Defendants' purported debt consolidation, debt resolution, and credit repair services.

67. As a result of each and every violation of the UCL, Plaintiff is entitled to damages pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.* as a result of Defendants' unlawful, unfair, and deceptive business practices. Defendants should be required to make restitution of such charges and fees acquired by Defendants, including interest on the sum from the dates of payment plus interest.

68. Defendants' advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that they are working with a company that actually provides debt consolidation, debt resolution, and credit repair services.

69. Defendants further mislead consumers into believing that Defendants' program will result in a net benefit to their credit score, report, or rating as long as they fully participate and make the payments as scheduled.

70. Plaintiff, reasonable consumers, and the public would likely be, and, in fact were, deceived and misled by Defendants' advertising that participating in its

program for the duration calculated by Defendants would reduce Plaintiff' debt and improve Plaintiff' long-term credit score, credit report, or credit rating.

71. Defendants' unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue or misleading advertising present a continuing threat to the public because Defendants continues to engage in unlawful, unfair, and deceptive conduct that harms consumers.

72. Defendants engaged in these unlawful, unfair, and fraudulent business practices motivated solely by Defendants' self-interest with the primary purpose of collecting monies from Plaintiff, thereby unjustly enriching Defendants.

73. Such acts and omissions by Defendants are unlawful and/or unfair and/or fraudulent and constitute a violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*.

74. As a direct and proximate result of the aforementioned acts and representations described above and herein, Defendants received and continues to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public.

75. Through this conduct, Defendants violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* by engaging in business practices that are unlawful, unfair, or fraudulent.

76. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct described herein, Defendants has been and will continue to be unjustly enriched by the receipt of ill-gotten gains from customers like Plaintiff, who unwittingly provided money to Defendants based on Defendants' misleading representations. This conduct caused Plaintiff damages and requires, among other things, restitution and injunctive relief to remedy and prevent further harm. Plaintiff seeks disgorgement of ill-gotten profits, statutory damages, punitive damages, interest, injunctive relief, and attorney's fees and costs.

//

//

//

**CAUSES OF ACTION CLAIMED BY PLAINTIFF AGAINST DEFENDANTS**

**COUNT I**

**VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

**15 U.S.C. §§ 1679, *ET SEQ.* (CROA)**

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. The foregoing acts and omissions constitute numerous and multiple violations of the CROA.

79. Defendant Debt Assistance Network is a credit repair organization ("CRO") because it counsels and advises consumers of the benefits and drawbacks of different types of credit repair services and then instructs consumers to take a course of action – to cease making any payments on accounts, cease any communication with creditors or collectors, refrain from closing any accounts, and forwarded any and all communications from creditors or collectors to Defendants – all in exchange for the promise of elimination of debt, improvement to Plaintiff' credit rating, credit history, and/or credit score.

80. Moreover, Defendants convince consumers to enroll in its program based on the misleading representation that its program is superior to other services, despite the immediate negative credit implications, because consumers will be able to reduce their debt load and make debt uncollectible, ultimately resulting in elimination of debt and improvement of their credit worthiness.

81. As a result of each and every violation of the CROA, Plaintiff demand that Defendants be ordered to pay Plaintiff actual damages, punitive damages, and attorney's fees pursuant to 15 U.S.C. § 1679g.

**COUNT II**

**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**

**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* (UCL)**

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint

as though fully stated herein.

83. The foregoing acts and omissions constitute numerous and multiple violations of the California's Unfair Competition Law ("UCL").

84. "Unfair competition" is defined by Bus. & Prof. Code §§ 17200, *et seq*. as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

85. By and through Defendants' conduct alleged herein, Defendants engaged in conduct that constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising prohibited by Bus. & Prof. Code §§ 17200, *et seq*.

**A.   "Unlawful Prong"**

86. Beginning at a date currently unknown through the time of the filing of this Complaint, Defendants committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200, *et seq*..

87. Through this conduct, Defendants violated California Business and Professions Code §§ 17200, *et seq*. and engaged in business practices that are unlawful because they violate the Credit Repair Organizations Act ("CROA").

**B.   "Unfair" Prong**

88. Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendants committed acts of unfair competition that are prohibited by Bus. & Prof. Code §§ 17200, *et seq*. and the Credit Repair Organizations Act ("CROA").

89. Through this conduct, Defendants violated California Business and Professions

Code §§ 17200, *et seq.* and engaged in business practices that are unfair because Defendants misrepresented and did not fully disclose material information regarding Defendants' DAN program to Plaintiff.

90. As a result of its unfair business practices, Defendants gains a competitive advantage over competitors who comply the law, such as the Credit Repair Organizations Act ("CROA") thereby receiving more money from, and causing injury to unsuspecting consumers like Plaintiff.

91. Alternatively, Defendants engaged in a pattern of "unfair" business practices that violate the wording and intent of the abovementioned statute/s by engaging in practices that are immoral, unethical, oppressive or unscrupulous, and against public policy, the utility of such conduct, if any, being far outweighed by the harm done to consumers like Plaintiff.

### C.   "Fraudulent" Prong

92. Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendants engaged in acts of unfair competition, including those described above and herein, prohibited and in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in a pattern of "fraudulent" business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*.

93. Defendants are likely to deceive by its advertising and representations that by participating in the DAN program and making payments for the duration calculated by Defendant, Plaintiff would in return receive reduced or eliminated debt and improvement to Plaintiff's credit score, credit report, or credit rating.

94. As a result of each and every violation of the UCL, Plaintiff is entitled to damages pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.* as a result of Defendants' unlawful, unfair, and deceptive business practices. Plaintiff seeks disgorgement of Defendants' ill-gotten profits, statutory damages, punitive damages, interest, injunctive relief, and attorney's fees and costs.

### D.  "Unfair, Deceptive, Untrue, or Misleading Advertising" Prong

95. Defendants' advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that by participating in the Defendants' DAN program and making payments for the duration calculated by Defendants, Plaintiff would in return receive reduced or eliminated debt.

96. Consumers are further misled into believing that Defendants' program will result in a net benefit to their credit score, report, or rating as long as they fully participate and make the payments as calculated and scheduled by Defendants.

97. Plaintiff, reasonable consumers, and the public would likely be, and, in fact were, deceived and misled by Defendants' representations and assurances that participating in its program and providing payments to Defendants for the duration calculated by Defendants would reduce Plaintiff's debt and improve Plaintiff' long-term credit scores, credit reports, or credit ratings.

98. Defendants' unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue or misleading advertising present a continuing threat to the public because Defendants continue to engage in unlawful, unfair, and deceptive conduct that harms consumers.

99. Defendants engaged in these unlawful, unfair, and fraudulent business practices motivated solely by Defendants' self-interest with the primary purpose of receiving unlawful and unearned monies from Plaintiff, thereby unjustly enriching Defendants.  Also, based upon information and belief, Defendants further benefited from putting Plaintiff in a worsened standing with his creditors because Defendants then referred Plaintiff to its affiliates to negotiate the debts and judgment that had accrued against him as a result of Defendants' conduct and failure to perform as promised in Defendants' contract.

100. Such acts and omissions by Defendants are unlawful and/or unfair and/or fraudulent and constitute a violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*.

101. As a direct and proximate result of the aforementioned acts and representations

described above and herein, Defendants received and continue to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public.

102. Through this conduct, Defendants violated Cal. Bus & Prof. Code §§ 17200, *et seq*. by engaging in business practices that are unlawful, unfair, or fraudulent.

103. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct described herein, Defendants has been and will continue to be unjustly enriched by the receipt of ill-gotten gains from customers, including Plaintiff, who unwittingly provided money to Defendants based on Defendants' misleading representations. In addition, Plaintiff has been misled by Defendants and suffered emotional and financial distress, denials of applications for credit, and irreparable damage to Plaintiff's credit score and credit history as a result of Defendants' conduct.

104. Plaintiff suffered an "injury in fact" because Plaintiff's money was taken each month by Defendants Plaintiff suffered concrete harm as a result of Defendants' unlawful and unfair conduct and Defendants' false and misleading representations.

### COUNT V

### BREACH OF CONTRACT

105. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

106. Defendants presented Plaintiff with the agreement for Defendants' DAN Program, entitled "Consumer Tender of Offer and Debt Assumption Agreement" and the parties entered into the contract for Defendants' debt relief and credit repair services on or about March 3, 2017.

107. Plaintiff fulfilled Plaintiff's obligations pursuant to the contract.

108. Defendants breached the parties' contract by failing to perform and provide services as promised according to the terms of the contract.

109. Defendants breached the contract by failing to make the required monthly payments to Plaintiff's creditors related to the accounts enrolled with Defendants under the agreement.

110. As a result of  Defendants' failure to make payments on Plaintiff's accounts enrolled in the DAN program, Plaintiff's creditors have charged off the accounts, causing the accounts to go to debt collectors and collections attorneys, and Plaintiff's credit scores, credit reports, credit worthiness, and credit reputation has been damaged, causing Plaintiff to be denied credit applications and placing Plaintiff further in debt as a result of Defendants' conduct.

111. Defendants breached the contract by failing to honor Defendants''100% Guarantee Policy" provided in the contract.

112. Defendants breached the contract by failing to refund Plaintiff's payments to Defendants when Defendants knew, or should have known, that no new contracts had been entered with the creditors and Plaintiff, as promised in the contract and under Defendants''100% Guarantee Policy."

113. Defendants breached the contract by failing to provide Plaintiff with "a local attorney for representation and defense" as promised in Defendants' contract when Plaintiff was sued for a debt related to an account entrusted to Defendants in the contract as a result of Defendants' failure to modify Plaintiff's agreements with their creditors and Defendants' failure to make payments due on Plaintiff's accounts.

114. Defendants breached the contract by failing to provide Plaintiff with access to contact with DAN representatives for information related to Plaintiff' accounts enrolled in Defendants' DAN Program, or information related to Defendants' program and services.

115. Defendants' breaches of the "Consumer Tender of Offer and Debt Assumption Agreement" caused damages to Plaintiff, including but not limited to, loss of money, increased debt, financial distress, denial of credit and limitations on

Plaintiff's utilization of credit, damage to Plaintiff's credit score, credit reports, credit worthiness, and reputation, including the collection lawsuit filed against Plaintiff and the default judgment entered against Plaintiff as a result of Defendants' breach of the duties Defendants owed Plaintiff under the parties' contract and Plaintiff's reliance on Defendants to provide services paid for and promised by the contract.

116. As a direct and proximate result of Defendants' conduct and numerous breaches of the parties' contractual agreement, Plaintiff have each been damaged in an amount to be determined at trial, and are entitled to compensatory damages, plus interest, costs, and other such monetary or equitable relief as may be deemed proper by the Court.

## COUNT VI
### NEGLIGENCE

117. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

118. Defendants owed various duties to Plaintiff with regard to its business practices pursuant to the CROA, the UCL, and the contract presented by Defendants to Plaintiff and then entered into by the parties.

119. Defendants breached its duties owed to Plaintiff by engaging in the acts described herein, each in violation of the statutes at issue herein, and contrary to the representations, promises, and guarantees provided by Defendants in the parties' contract.

120. Plaintiff asserts that Defendants is the actual and legal cause of Plaintiff's damages.

121. Plaintiff believe and thereon allege that as a proximate result of Defendants' negligence, Plaintiff have suffered injury in the form of loss of money unlawfully and unfairly acquired by Defendant, increased debt, damage to Plaintiff's credit score, credit reports, credit worthiness, and reputation,

including the lawsuit filed against Plaintiff and the default judgment entered against Plaintiff as a result of Defendants' breach of the parties' contract and Plaintiff's reliance on Defendants to provide services paid for and promised by the contract.

122. Due to the egregious violations alleged herein, Plaintiff asserts that Defendants breached Defendants' duties in an oppressive, malicious, despicable, gross, and wantonly negligent manner. As such, said conduct establishes Defendants' conscious disregard for the rights of Plaintiff, and entitles Plaintiff to recover punitive damages from Defendants jointly and severally.

## COUNT VII

### NEGLIGENT MISREPRESENTATION

123. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

124. Defendants intentionally and willfully misrepresented the quality of the services offered to Plaintiff and benefits that would be realized by Plaintiff.

125. Said representations by Defendants were material misrepresentations.

126. At all relevant times, Defendants made the false and misleading representations to Plaintiff with full knowledge of their falsity.

127. Plaintiff entered into a contract with Defendants based solely on the representations made by Defendant. At all relevant times, Defendants intended that Plaintiff rely on the representations made by Defendants.

128. Plaintiff did in fact rely on the misrepresentations by Defendants, thereby causing Plaintiff harm.

129. As a result of the above, Plaintiff is entitled and does seek to recover damages from Defendants jointly and severally.

## COUNT VIII

### INTENTIONAL MISREPRESENTATION

130. Plaintiff incorporates by reference all of the above paragraphs of this Complaint

1    as though fully stated herein.

2    131. Defendants intentionally and willfully misrepresented quality of the services

3         offered and benefits that would be realized by Plaintiff.

4    132. Said representations were material misrepresentations.

5    133. At all relevant times, Defendants made false representations to Plaintiff with full

6         knowledge of its falsity.

7    134. At all relevant times Defendants intended that Plaintiff rely on the

8         representations made by Defendant.

9    135. Plaintiff did in fact rely on the misrepresentations by Defendant, causing

10        Plaintiff harm.

11   136. As a result of the above, Plaintiff is entitled and does seek to recover damages

12        from Defendants jointly and severally.

13                               **PRAYER FOR RELIEF**

14        **WHEREFORE**, Plaintiff pray that judgment be entered against Defendants

15   providing the following relief to Plaintiff:

16   •    Declaratory relief finding Defendants' conduct alleged herein be adjudged and

17        decreed to violate the consumer protection statutes and claims asserted herein;

18   •    That Defendants be enjoined from continuing the wrongful conduct alleged

19        herein and required to comply with all applicable laws;

20   •    That Defendants be disgorged of all monies wrongfully acquired and all ill-

21        gotten profits obtained by Defendants as a result of the conduct and practices

22        alleged herein, allowing Plaintiff to recover amounts by which Defendants has

23        been unjustly enriched;

24   •    As a result of each and every violation of the CROA, an award of actual

25        damages, the greater of (1) the amount of any actual damages sustained by

26        Plaintiff or (2) any amount paid by Plaintiff to Defendant, pursuant to 15

27        U.S.C. § 1679g(a)(1)(A)-(B);

28   •    An award of punitive damages, in such amount as the Court may allow,

pursuant to 15 U.S.C. § 1679g(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1679g(a)(3);
- An award of statutory damages as provided by applicable law;
- An award of actual damages in an amount to be determined at trial;
- An award of general damages in an amount to be determined at trial;
- An award of  compensatory damages in an amount to be determined at trial;
- An award of  special damages in an amount to be determined at trial;
- An award of punitive damages in amount to be determined at trial;
- An award granting Plaintiff's attorneys' fees and costs of suit incurred herein;
- Pre-judgment interest and post-judgment interest as provided by law; and
- Any and all other relief the Court deems just and proper.

### TRIAL BY JURY

137. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury.


Dated: April 1, 2021                          Respectfully submitted,

                                                **KAZEROUNI LAW GROUP, APC**


                                      By:   s/ Mona Amini
                                                MONA AMINI, ESQ.
                                                *Attorneys for Plaintiff*